CALDWELL (UNITED STATES v.). See Cases Nos. 14,707 and 14,708.

---

## Case No. 2,305.

### CALDWELL v. WALTERS.

[4 Cranch, C. C. 577.][1]

Circuit Court, District of Columbia. March Term, 1835.

DISSOLUTION OF INJUNCTION—SERVICE OF NOTICE OF MOTION.

If the answer be filed in term-time the court will hear a motion to dissolve the injunction at any time upon reasonable notice. Three days' notice, left at the office of the complainant's solicitor, in his absence from town, is reasonable.

[In equity. Bill by Timothy Caldwell against Walters, the executor of Moore.]

·The bill was filed and injunction granted by CRANCH, Chief Judge, on the 18th of May, 1835. On the 3d of June the answer was filed, and on the same day notice of motion to dissolve on this day was left at the office of Z. C. Lee, the complainant's solicitor. Mr. Lee being then absent from this city.

Mr. Coxe now moved for dissolution, Mr. Lee not being present, and, as it was said, not in the city. Mr. Coxe said, that according to the rule of this court, or a former decision of this court, when the answer is filed in term time, the court will hear a motion to dissolve at any time, upon reasonable notice.

CRANCH, Chief· Judge, said he had no recollection of such a decision; but MORSELL. Circuit Judge, said there was such an one.

THE COURT (CRANCH, Chief Judge, contra) said the notice was reasonable, and took the bill and answer to consider the motion; and afterwards dissolved the injunction.

[1] [Reported by Hon. William Cranch, Chief Judge.]

---

## Case No. 2,306.

### CALDWELL v. WEITZEL.

[2 Cin. Law Bul. 276: 23 Int. Rev. Rec. (1877) 383.]

Circuit Court, S. D. Ohio.

INTERNAL REVENUE—MANUFACTURE OF DISTILLED SPIRITS—REDUCTION OF PRODUCING CAPACITY.

[A notice required by Rev. St. § 3311,[1] relating to the reduction of the manufacture and production of distilled spirits, stated a desired reduction of capacity, to take effect on and after January 4th,—the date of the letter; a second notice, of further reduction, stated that it would take place on and after January 5th; and a third notice stated a desire for still further reduction, to take effect on and after January 6th. Each notice specified a fermenting tub to be closed on the day the reduction was to take effect, and the tubs were in fact closed and sealed, as required by the section, on the days specified. It appeared by the testimony that the process of fermentation was fixed at 48 hours. Held, that the producing capacity was not reduced until January 6th.

Suit [by Robert W. Caldwell against Lewis Weitzel, collector of internal revenue] to recover $2,736, an alleged excess of tax on distilled spirits assessed and paid under protest.

Warner M. Bateman, for plaintiff.

Channing Richard, Dist. Atty., contra.

Charge to the jury: ·

SWING, District Judge. This is a suit brought by a distiller to recover what he alleges to have been an illegal assessment which he paid to the defendant under protest. The assessments were made for alleged excess of grain used, and the distiller denies that there was any excess. The distiller shows by his own evidence that on January 4, 1876, he gave notice in writing to the collector, of his intention to reduce his capacity from 1,140 bushels to 1,013 33-100 bushels, to take effect on and after January 4. At the same time he gave another notice of reduction from 1,013 33-00 bushels to 886 67-100 bushels, to take effect on and after January 5, and at the same time a third notice of reduction from 886 67-100 bushels to 760 bushels, to take effect on and after January 6. Each notice specified a fermenting tub to be closed on the day the reduction was to take effect, and those tubs were, in fact, closed and sealed by the deputy collector on those

[1] [Sec. 3311. Whenever any distiller desires to reduce the producing capacity of his distillery, he shall give notice of such intention, in writing, to the collector, stating the quantity of spirits which he desires thereafter to manufacture or produce every twenty-four hours, and thereupon said collector shall proceed, at the expense of the distiller, to reduce and limit the producing capacity of the distillery to the quantity stated in said notice, by placing upon a sufficient number of the fermenting-tubs close-fitting covers, which shall be securely fastened by nails, seals, and otherwise, and in such manner as to prevent the use of such tubs without removing said covers or breaking said seals, and shall adopt such other precautions as may be prescribed by the commissioner of internal revenue to reduce the capacity of said distillery. * * *]

successive days. The testimony further shows that on January 4 and 5 the distiller mashed only 760 bushels of grain, but on those days he produced spirits from 1,140 bushels, previously mashed, and in the fermenting tubs when he gave the notices. The revenue officer corroborates the distiller; he says that he closed one tub on the 4th, another on the 5th, and another on the 6th. The assessment was made, under section 3309, for an excess of grain used on the 4th and 5th of January. There is no dispute as to the quantity of grain used on those days. It was 1,140 bushels, but the whole question at issue in the case is as to what was the capacity of the distillery on those days. The plaintiff, the distiller, claims that it remained unchanged until the 6th—1,140 bushels—while the district attorney claims that it was reduced on the 4th to 1,013 33-100 bushels, and on the 5th to 886 67-100 bushels, as specified in the notices given by the distiller.

This raises the whole question at issue. If the capacity was not reduced until the 6th, there was no excess of grain used; if it was reduced on the 4th and 5th, there was an excess, and the assessment was legal. The producing capacity of a distillery is fixed by a survey, which determines the number of bushels of grain that can be mashed and fermented each day. First, the distiller is required to state, in his notice, the number of hours in which the distillery will ferment each tub of mash, and the assessor is also required in his report to state the particular period to be allowed for fermentation. I understand in this case that the report of the assessor fixed the period for fermentation at forty-eight hours; upon the time fixed in the case, the assessor determined the spirit-producing capacity of this distillery. It is very evident as a question of fact, that there were no spirits produced from this distillery until the third day after the distillery had commenced operation, and the question at law arising upon that admitted fact would be that the distiller could not be charged with any capacity of producing, so far as to be required to pay upon it, until the spirits themselves were produced. The spirit-producing capacity with which this distillery stands charged continues until it is changed by the provisions of law. The party himself has no power to change the capacity; he is bound to mash all the bushels of grain upon which that capacity is based. The law provides the method in which this change is to be made. It will be found in the 3311th section. Outside of these notices, it is said by the plaintiff, and also by the officer of internal revenue, that the proposition was to reduce the spirit-producing capacity of this distillery to 3,040 gallons of spirits, as based upon 760 bushels of grain. That was the purpose and object of these notices, and that, in order to do so, it was supposed to be essential that they should fix in these notices the capacity to which it was reduced by the closing of

each tub; that in order to accomplish that purpose it required the closing of three several tubs. They could not all be closed on one day without a loss to the distiller of what he had already mashed up to the 4th of January, so they must close one on the 4th of January, one on the 5th of January, and one on the 6th of January, so as to accomplish the object, to-wit: the reduction of the producing capacity of spirits of that distillery to 760 bushels mash, producing 3,040 gallons of spirits. Now, if it were not for the fact that these notices contain a statement as to the time on which this reduction should take effect, there would not be the slightest difficulty in this case. When we look back at the commencement of this distillation we find that two days must elapse before any spirits can be produced. Upon the third day they may be produced. And it takes just the same length of time, according to the testimony in the case by the officer and by the distiller, to complete the action of spirits produced after the distiller had ceased to mash any grain, unless he throws that which he has on hand away. If that be so, it must necessarily take the same length of time which it took originally to produce the spirits, to complete the distillation of that which is in the process of distillation, and to reduce the quantity to that which they desired the reduction to be made. And it is very clear that this section contemplates that very thing, and nothing more. It does not contemplate a sudden cessation of this man's business, and a loss of whatever he may have on hand. If he pays the full producing capacity of this distillery until the amount which he has on hand, and which is in the process of distillation is made, the government gets all that it is entitled to—under all possible circumstances. The government fixes this man's spirit-producing capacity at 4,500 gallons of spirits produced, and the testimony shows in this case that for the 4th and 5th days of January, he paid taxes upon that amount, and the spirits to this extent were paid for. But by a fiction of law it is claimed that these notices having stated that these reductions were to take effect upon the 4th, 5th and 6th days of January, that they were by law, although not in fact, reduced to that quantity.

Where there are statutes or regulations which seem to conflict with each other, we must harmonize, if possible, both, so that the true spirit and intent of each shall be fully carried out. Now, could there be any doubt as to the intent of this statute, "Whenever any distiller desires to reduce the producing capacity of his distillery, he shall give notice of such intention, in writing, to the collector, stating the quantity of spirits which he desires thereafter to," &c. "Thereafter" is a very comprehensive term. It may mean from the very moment of the time that you utter the word, in the future, or it may mean a day subsequent to that, and to

be in operation and effect upon a day subsequent to that day upon which you utter the word, "thereafter to manufacture and produce every twenty-four hours." So, in conformity with this statute, he sends the collector a notice like this: "I wish after this date, or I wish hereafter, to mash but 760 bushels of grain, and to produce but 3,040 gallons." Upon the receipt of this notice the statute provides: "And thereupon said collector shall proceed, at the expense of the distiller, to reduce and limit the producing capacity of the distiller to the quantity stated in said notice," etc. The notice does not reduce it; the notice limits it in one sense, but the notice itself does not reduce it. The notice says simply to the officer of the government, "I desire to reduce the producing capacity of my distillery." Upon receipt of this notice "the collector shall proceed to reduce." It is the act of the collector in reducing it, not the act of the distiller in giving notice. It was the act of the collector that reduced this spirit-producing capacity, and the statute points out definitely how it should be done. Now in this case, where the fermentation is fixed at forty-eight hours in order to reduce it the officer says: "You must seal the first day one of these tubs; the second day you must seal another; and the third day you must seal the third, which completes the reduction." The thing that the officer is required to do is to reduce and limit the producing capacity of the distillery to the quantity stated in said notice, and the act of reduction is the act of that officer. It is his duty to place "upon a sufficient number of fermenting tubs closely fitted covers, which shall be securely fastened by nails, seals and otherwise, in such manner as to prevent the use of such tubs without removing said covers," etc. On the 4th he closed one of the tubs, that is the first step in reducing it; on the 5th he adds another tub, that is the second step; and the third day he closed the third tub, and that is the third and completing step in the reduction of the capacity of this distillery. The work is completed, is finished, and the capacity is reduced. Now, the mere fact that the distiller says that this did take effect from the 4th, from the 5th, and from the 6th, does not make it so, because the physical fact shows that it did not take effect on those days. The physical facts as shown from the testimony of the officer are that it took effect on the 6th, when the last tub was sealed. Now, if it did not take effect in fact until this third tub was sealed, how can it be said, according to the spirit of all these provisions, that it took effect in law upon the days when the notices were given?

The conclusion to which I have arrived is that the producing capacity of this distillery was not in law, reduced until the 6th day of January, that it continued for 4th and 5th days of January to be 1,145 bushels, 4,560 gallons, and this being the amount of grain in fact used, there was no use of grain by the distiller in excess of the capacity of his distillery. The same reasoning and conclusions apply to the assessments for the 25th and 26th of May, 1876. The assessments were therefore illegal.

Upon the conclusion of the charge, the district attorney agreed that the jury should return a verdict for the plaintiff in the sum of $2,805.40, which was accordingly done, an exception to the charge being taken to enable the district attorney to carry to the supreme court an error. Verdict for plaintiff for $2,805.40.

[NOTE. The defendant sued out a writ of error, and the supreme court affirmed the judgment of the circuit court on the authority of Weitzel v. Rabe, 103 U. S. 340, in which case, heard at the same time, a similar question arose. The affirmation in that case was upon the ground that the distiller, having complied with the statute allowing reduction of capacity when the distillery was in operation, was entitled to have the capacity estimated when the reduction was going on, in such a way as not to charge him with material in mash when the change was applied for, as material used in excess of capacity. Id.]